UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) No. | |
| | ) | |
| ERIC BAILEY, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree as follows:

### 1. PARTIES

The parties are the defendant Eric Bailey, represented by defense counsel Marc Johnson, and the United States of America (hereinafter "Government"), represented by the U.S. Department of Justice, Criminal Division, Fraud Section, and the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the Criminal Division, Fraud Section, and the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count 1 of the Information, the Government agrees that no

1

Initials (Defendant) _EB_

Date _7\16\24_

further federal prosecution will be brought in this District relative to the defendant's purchase and sale of pharmaceutical drugs of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Count 1, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to PNC BANK, Account No. xx-xxxx-8045, in the name of EMED MEDICAL COMPANY, LLC. Also subject to forfeiture is a sum of money equal to the value of any property, real or personal, constituting or derived from any traceable criminal proceeds, which, including Account No. xx-xxxx-8045, is at least approximately $2.165 million.

## 3. ELEMENTS

As to Count 1, the defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1) and (b)(1)(c), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are (1) the defendant was in possession of hydrocodone and oxycodone; (2) the defendant knew and intended that he was in possession of hydrocodone

2

Initials (Defendant) _SB_

Date ___7|16|24___

and oxycodone; and (3) the defendant intended to distribute or dispense, or to cause to be distributed or dispensed, some or all of the hydrocodone and oxycodone to another person, in a manner not authorized by law.

4. **FACTS**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

At all relevant times, Defendant Eric Bailey owned and operated EMED Medical Company, hereinafter "EMED." EMED was and is a wholesaler of pharmaceutical drugs, including both controlled and non-controlled substances. Bailey was aware that EMED was required by law to perform due diligence on any pharmacy purchasing controlled substances to ensure that no controlled substances were diverted and to report any suspicious orders of unusual size, orders that deviated from a normal pattern, and/or orders that were of unusual frequency.

Bailey had ultimate control over EMED's purchase and sale of controlled substances. This included acquiring controlled substances from manufacturers and distributors, setting the prices that pharmacy customers paid for controlled substances, approving the sale of controlled substances to new customers, setting the limits on orders, and setting the compliance protocols for new and existing customers.

EMED began to purchase some controlled substances from Company A in around 2017. In or around late 2019, EMED significantly ramped up its purchasing of controlled drugs from Company A. By that time, EMED's sales of Schedule II controlled substances—those with the

3

Initials (Defendant) _EB_

Date _7|16|24_

highest potential for abuse among drugs with a medical purpose—were limited to opioids in their maximum strength form: specifically, hydrocodone 10-325mg and oxycodone 30mg. Those pills, in those strengths, were the only Schedule II controlled substances EMED purchased from Company A from late 2019 through late 2021.

To receive rebates from Company A (referred to in the industry as chargebacks), Bailey was required by Company A to provide EMED's Houston-area customer list—and the amount of Company A-manufactured hydrocodone 10-325mg and oxycodone 30mg that EMED's Houston-area customers purchased each month—directly to Company A. After factoring in chargebacks tied to that information, EMED bought 100-count bottles of oxycodone from Company A for around $20. Bailey then caused EMED to sell the same bottle to Houston-area pharmacy customers for $250 or more.

On December 7, 2021, Bailey caused EMED to purchase 120 500-count bottles of hydrocodone 10-325mg and 240 100-count bottles of oxycodone 30mg from Company A, intending that the drugs would be distributed to EMED's Houston-area pharmacy customers, even though Bailey knew that (1) EMED's Houston-area customers exhibited numerous red flags for diversion and (2) EMED was not complying with its obligations to maintain an effective system to detect and deter diversion; *i.e.*, intending to distribute the drugs in a manner not authorized by law.

After Company A filled the December 7, 2021 order, Company A notified EMED that it was discontinuing all controlled substance sales to EMED. Company A cited, among other things, law-enforcement operations in Houston involving arrests of EMED pharmacy customers and red

4

Initials (Defendant) SB

Date 7\16\24

flags for diversion in the chargeback data that EMED submitted to Company A. Company A indicated it would not resume selling controlled substances to EMED unless and until Bailey retained a third-party compliance consultant and implemented the consultant's recommendations to improve EMED's due diligence programs.

Bailey retained a compliance consultant but did not implement the consultant's recommendations. Instead, Bailey caused EMED to begin purchasing oxycodone 30mg and hydrocodone 10-325mg from Company B. On or about August 12, 2022, Bailey caused EMED to purchase from Company B 277 bottles of oxycodone 30mg pills and 75 bottles of hydrocodone 10-325mg pills, intending that the drugs would be distributed to EMED's Houston-area pharmacy customers, even though Bailey knew that (1) EMED's Houston-area customers exhibited numerous red flags for diversion and (2) EMED was not complying with its obligations to maintain an effective system to detect and deter diversion; *i.e.*, intending to distribute the drugs in a manner not authorized by law.

5.   **STATUTORY PENALTIES**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years of imprisonment, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than three (3) years.

*Continued on next page...*

5

Initials (Defendant) SB

Date 7│16│24

## 6. U.S. SENTENCING GUIDELINES (2021 MANUAL)

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

### a. Chapter 2 Offense Conduct:

(1) **Base Offense Level:** The parties agree that the base offense level is 34, as found in Section 2D1.1(c)(2). The parties agree that the quantity of converted drug weight for which the defendant is accountable, including relevant conduct, is at least 10,000kg, but less than 30,000kg, resulting in the agreed Base Offense Level.

(2) **Specific Offense Characteristics:** The parties agree that they are free to advocate for or against any Specific Offense Characteristics, and that they are leaving the matter open for litigation at sentencing. The parties agree that the district court's determinations about Specific Offense Characteristics are final and neither side will appeal on that basis.

### b. Chapter 3 Adjustments:

(1) **Acceptance of Responsibility:** The parties agree that three (3) levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If the Government subsequently receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's

6

Initials (Defendant) _SB_

Date ___7\16\24___



eligibility for this deduction, the Government may present said evidence to the Court and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1 without violating the plea agreement.

(2) **Role in the Offense:** The parties agree that they are free to advocate for or against any Role-related adjustment under Section 3B1, and that they are leaving the matter open for litigation at sentencing. The parties agree that the district court's determinations about any Role-related adjustment under Section 3B1 are final and neither side will appeal on that basis.

c. **Other Adjustment(s)/Disputed Adjustments:** The parties have no further agreement regarding any other adjustments.

d. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 31, plus or minus any offense levels attributable to Specific Offense Characteristics and/or Role that the Court concludes apply in this case.

e. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

f. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein, and the parties shall not be permitted to withdraw from the plea agreement.

7

Initials (Defendant) _SB_

Date ___7\16\24___



The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

## 7.   WAIVER OF APPEAL AND POST-CONVICTION RIGHTS

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** The parties have left open for litigation at sentencing the application of any Specific Offense Characteristics and Role-related adjustments. The parties agree to abide by the Court's determination of those issues and specifically waive their rights to appeal the Court's rulings resulting in the calculation of the Total Offense Level. In the event the Court accepts the plea, and after determining the appropriate Total Offense Level, sentences the defendant within or below that corresponding range, then, as a part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court

8



Initials (Defendant) SB

Date ___7|16|24___

accepts the plea and, after determining the appropriate Total Offense Level, sentences the defendant within or above that corresponding range.

b. **Habeas Corpus**: The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

c. **Right to Records**: The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER**

a. **Disclosures Required by the United States Probation Office**: The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

b. **Civil or Administrative Actions not Barred; Effect on Other Government Agencies**: Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation, or administrative action against the defendant.

c. **Supervised Release**: Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant

9

Initials (Defendant) _SB_

Date _7\16\24_

will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

d. **Mandatory Special Assessment**: Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

e. **Possibility of Detention**: The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f. **Fines and Costs of Incarceration and Supervision**: The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

g. **Forfeiture**: The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to

10

Initials (Defendant)

Date 7 | 16 | 24

receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant also agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of $2,165,582.44, with the defendant receiving credit against the money judgment for directly forfeited assets, including $196,832.36 seized from a PNC bank account ending in 8045, in or around late September 2022. The defendant consents that the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9.  ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS

In pleading guilty, the defendant acknowledges, fully understands and, hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried

11

Initials (Defendant) SB

Date 7\16\24

by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; and the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any

12

Initials (Defendant) $\mathcal{SB}$

Date 7\16\24

agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT

After pleading guilty and before sentencing, if the defendant commits any crime other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office, or fails to appear for sentencing, the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

*Continued on next page...*

13

Initials (Defendant) EB

Date 7\16\24

## 12.  NO RIGHT TO WITHDRAW GUILTY PLEA

Pursuant to Federal Rule of Criminal Procedure 11(c) and (d), the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

9/26/24
_____
Date

_____
Date

a/26/24
_____
Date

9/26/24
_____
Date

_____
Drew Pennebaker
Trial Attorney
Criminal Division, Fraud Section
Andrew.pennebaker@usdoj.gov

Jennifer Roy
Assistant United States Attorney

_____
Eric Bailey
Defendant

_____
Marc Johnson
Attorney for Defendant

14

Initials (Defendant) EB

Date 7|16|24